## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MICHAEL A. WOOD,

               Petitioner,           :     Case No. 3:19-cv-304

     - vs -                          District Judge Walter H. Rice
                                      Magistrate Judge Michael R. Merz

TIM BUCHANAN, Warden,
  Noble Correctional Institution,

                                   :
               Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case was brought *pro se* by Petitioner Michael Wood to obtain relief from his convictions operating a motor vehicle while under the influence after having had five convictions in the past twenty years (Petition, ECF No. 1). Upon the Court's Order (ECF No. 2), the Respondent has filed the State Court Record (ECF No. 14) and Return of Writ (ECF No. 15). In the Order for Answer the Court provided that Petitioner's reply/traverse would be due twenty-one days after the Return was filed. On March 27, 2020, the Court reminded Petitioner that his due date for the reply was April 17, 2020, but no reply has been filed.

**Litigation History**

Wood was indicted by a Clark County grand jury in two separate cases, Case No. 16CR143 and 16CR144, and charged with three counts of operating a operating vehicle while under the

influence of alcohol or drugs having within the previous twenty years been convicted of five or more times of the same violations and in both incidents having refused to submit to a chemical test. The first indictment related to an incident on February 2, 2016, and the second to an incident on March 17, 2016 (State Court Record, ECF No. 1, Exs. 1 and 2).  The cases were tried jointly and a jury convicted Wood on all counts.  The trial court imposed an aggregate sentence of three years imprisonment.

Wood appealed and the Second District Court of Appeals affirmed.  *State v. Wood,* 2018-Ohio-875 (Ohio App. 2nd Dist. Mar. 9, 2018), appellate jurisdiction declined, 2018-Ohio-2380 (2018).  Wood filed an application to reopen his direct appeal to raise claims of ineffective assistance of appellate counsel.  The Second District denied relief, *State v. Wood,* Case No. CA 2016-CA-69 (2nd Dist. Jul. 6, 2018)(unreported; copy at State Court Record, ECF No. 14, Ex. 23). The Supreme Court of Ohio again declined appellate review. *Id.* at Ex. 27.

Wood filed a Petition for Post-Conviction Relief in the trial court which was denied. *Id.* at Ex. 34.  The Second District again affirmed.  *State v. Wood,* 2018-Ohio-3204 (Ohio App. 2nd Dist. Aug. 10, 2018), appellate jurisdiction declined, 2018-Ohio-4091 (2018).  Wood then filed his Petition in this Court on September 23, 2019 (ECF No. 1)[1].

Rather than follow the standard form for Habeas Corpus Petitions under 28 U.S.C. § 2254, Wood has pleaded his grounds for relief in relation to the state court proceedings from which they arise.  Because the Petition is prolix, the Magistrate Judge believes this Report will be more readable if it maintains Wood's labeling.

---

[1] Although Wood completed his prison term in October 2019, he remains in custody for habeas corpus jurisdiction purposes by virtue of his sentence to a term of post-release control.

# Analysis

**Ohio Constitutional Claims**

All of Petitioner's Grounds for Relief include claims that his convictions violate the Ohio Constitution. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar concurring).

Therefore this Report will not address claims made under the Ohio Constitution.

**Part One of the Petition**

In the first part of his Petition, Wood raises claims that were dealt with on direct appeal.

> **GROUND ONE:** By accepting the jury's verdict in 16-CR-143 and 16-CR-144 the trial court committed reversible error and violated Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution and Article I, Section 5, l0, and 16 of the Ohio Constitution, whereas the sufficiency and manifest weight of evidence offered by the State of Ohio failed to prove beyond a reasonable doubt that Mr. Wood could be convicted on all counts in the indictments, resulting a fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 29).

In his First Ground for Relief, Wood claims his conviction is against the manifest weight

of the evidence and is supported by less than constitutionally sufficient evidence.  On direct appeal

of his conviction, Wood raised only a manifest weight assignment of error and not an insufficiency

of the evidence claim.

Although both of these claims address the evidence at trial, they are analytically different.

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Supreme Court of Ohio reaffirmed the

important distinction between appellate review for insufficiency of the evidence and review on the

claim that the conviction is against the manifest weight of the evidence.    It held:

> In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.   (1982), 457 U.S. 31, 45, 102 *Tibbs v. Florida*, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief."  (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new

4

> trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387.  In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader.  The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus.  The consequences of the distinction are important for a criminal defendant.  The State may retry a case reversed on the manifest weight of the evidence;  retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause.  *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

A weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Therefore this Court cannot review for error the Second District's decision that the convictions were not against the manifest weight of the evidence, despite Wood's request that we do so (Petition, ECF No. 1, PageID 30).

However, a claim that a conviction is supported by insufficient evidence does state a claim under the Due Process Clause of the Fourteenth Amendment.  *Jackson v. Virginia*, 443 U.S. 307 (1979).  A state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091,

2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.). In other words, for a verdict to be supported by the weight of the evidence, there must also logically be enough evidence. The Second District decided Wood's weight of the evidence assignment of error as follows:

### Weight of the Evidence

[*P3] In his first assignment of error, Wood argues that the trial court's judgment in each case was against the manifest weight of the evidence, because the video of the traffic stop from the police officers' lapel cameras did not support the conclusion that he had been impaired. He asserts that, "because the best evidence of impairment was the video footage, the jury, without doubt, lost its way * * *" in convicting him.

[*P4] When reviewing an argument challenging the weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997- Ohio 52, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

### Case No. 16 CR 143 (Offense of February 2, 2016)

[*P5] Officer John Betts of the German Township Police Department testified that he observed a white Oldsmobile drive past Northwest High School while working the second shift (3 - 11 p.m.) on February 2, 2016; it was rainy and dark. According to Officer Betts's radar, the Oldsmobile was travelling at 70 mph in an area where the speed limit was 55 mph. Betts initiated a traffic stop, and the driver, Wood, turned left onto Lawrenceville Drive before stopping. However, Wood stopped his car very near the corner, such that Betts's cruiser was "sticking out in the intersection" when he pulled behind Wood. Betts initially approached the car and asked Wood to pull up further, which Wood did. Betts moved his cruiser out of the intersection, then approached Wood's car a second time.

[*P6] When he approached the car a second time, Betts detected a "strong odor of marijuana." Wood had a state identification card, but

6

no driver's license or insurance. Betts testified that Wood had a lit cigarette in his hand; from the officer's training, he suspected that the cigarette may have been intended to mask other odors, such as alcohol or marijuana.

[*P7]  Betts testified that, when backup arrived, Wood was removed from his car and patted down for officer safety; Wood was compliant during this process. Betts observed multiple open containers of alcohol on the passenger seat and floorboard when Wood stepped out of the car; one Bud Light container had liquid still inside. Betts also observed that Wood's eyes were "very red" and "very bloodshot and glassy," and his speech was "a little slurred." Wood claimed the cans were for scrap metal, and he denied that he had been drinking alcoholic beverages. Wood refused to comply with Officer Betts's request that he (Wood) perform field sobriety tests.

[*P8]  Over the radio, Officer Betts's supervisor, Corporal Joshua Perry, instructed Betts to transport Wood to Springfield Regional Hospital for a blood test, and Betts did so. At the hospital, Betts attempted to read BMV Form 2255 to Wood, but Wood interrupted him several times and claimed he did not understand what Betts was reading. Betts started to read the form a second time, and again Wood made "multiple interruptions" and "sarcastic remarks." Betts testified that Wood made a crude comment to a female emergency medical technician and repeatedly and expressly refused to submit to the blood test. When Wood was subsequently transported to the police station, he asked for fast food for his "inconvenience and harassment."

[*P9]  Officer Betts testified that he wore a body camera during his interaction with Wood, pursuant to the police department's standard of practice. When portions of the video were played at trial, Betts testified that the evidence of impairment demonstrated by the video was Wood's swaying, "head bobbing," and sluggish speech. Betts also suggested that another officer who was assisting him (Betts) at the scene provided physical support for Wood when Wood was out of the car.

[*P10]  Cpl. Perry testified that he met Officer Betts at Springfield Regional Hospital on February 2, 2016. Perry described Wood as "extremely belligerent, yelling, kind of out of control." He also stated that there was a strong odor of alcohol in the hospital room where Wood had been waiting. Perry described Wood as "combative" during Officer Betts's reading of the BMV form related to chemical tests.

7

[*P11]  Wood argues that the video recording of the February 2 incident contradicts certain aspects of the officers' testimony and the jury's conclusion that he was impaired. For example, Wood claims that the video showed he "had no trouble maintaining his balance and that an officer was holding him only part of the time." But Wood's argument acknowledges that the officer was holding Wood part of the time, which is consistent with the testimony at trial. Moreover, because the video camera was attached to Officer Betts's uniform, and Betts was moving during most of his encounter with Wood, the video does not provide definitive evidence as to whether Wood was swaying or standing still.

[*P12]  Wood describes his conduct in the video as "cooperat[ive] in a belligerent manner" and "no more than angry," whereas the officers described his conduct as "extremely belligerent," "combative," "uncooperative," and "kind of out of control." These are, perhaps, nuanced distinctions, and it was for the jury to decide the extent to which Wood's behavior indicated impairment. Wood's characterization of his behavior was not the only reasonable interpretation of the video evidence. The jury was permitted to weigh the video together with all other evidence to conclude whether Wood was impaired.

**Case No. 16 CR 144 (Offense of March 17, 2016)**

[*P13]  German Township Police Officer Katy Finney testified that, on March 17, 2016, she was working second shift with her partner when they pulled their cruiser behind a white Oldsmobile on Snyder Domer Road and noticed that the license validation sticker was obstructed. Finney also noticed "lane violations" as the Oldsmobile traveled down the road. Finney described the lane violations as "back and forth in the lane," "crossing [the] center line," and "touching that fog line;" she later stated that the car's tires touched the lines rather than crossing them.

[*P14]  Finney initiated a traffic stop, but after Wood pulled over, he "wouldn't acknowledge [her] presence," talking on the phone and smoking a cigarette with the driver's window rolled up. Finney asked Wood to step out, and he complied. She detected an odor of alcoholic beverage, saw that he had bloodshot and glassy eyes, and noted that his speech was slurred. At first, Wood would not provide his name. Finney's supervisor, Cpl. Joshua Perry, responded to the scene, and he was able to identify Wood. Wood refused to perform field sobriety tests.

8

[*P15]  Cpl. Perry also testified at trial as to his involvement with Wood's March 17 traffic stop. Perry stated that he was not the first officer at the scene, but that he arrived very soon after the stop and was able to identify Wood for Finney after he refused to give his name or identification. Perry described Wood as "combative and uncooperative." Perry further stated that Wood had a "brand new cigarette" which he refused to extinguish until the third time he was asked to do so; to Perry, this behavior suggested that Wood was trying to cover up another smell. After refusing to perform field sobriety tests, Wood was read his rights and transported to the highway patrol post for a breath test.

[*P16]  The jury viewed the body camera recording of Finney's partner.

[*P17]  Perry did not accompany Wood and Finney to the highway patrol post; instead, he stayed with Wood's vehicle to await a tow truck. Perry conducted an inventory of the car, which included multiple open beer containers on the front passenger floor board.

[*P18]  As Officer Betts's supervisor, Perry had reviewed photos of Wood's car from the traffic stop on February 2, 2016. He testified that the same brand of beer was present in the car on March 17. Perry did not know if any of the cans were the same, but he testified that there were more containers in the car on March 17 than there had been on February 2; 17-19 cans were collected from the car on March 17. Some of the containers were within reach of the driver and were cold to the touch.

[*P19]  With respect to the March 17 incident, Wood again argues that the video from the body camera "clearly" shows that he was cooperative, although "annoyed and unwilling to provide information due to a pretextual stop." He also asserts that the video failed to show any lack of balance, head bobbing, or other indicia of impairment. Although the video does not show obvious signs of lack of coordination or balance, it shows Finney's interaction with Wood from the perspective from her partner's body camera (from the passenger side of the car) when Wood stepped out of vehicle. Officer Finney testified to indicia of impairment such as bloodshot and glassy eyes and slurred speech, and she commented on the video that Wood looked "wobbly" when he stepped out. Moreover, what Wood characterizes as "annoyed" cooperation, including his initial refusals to extinguish his cigarette and to identify himself, might reasonably be viewed by others as a lack of cooperation. Again, this was a question for the jury to decide.

> [*P20]  Although some of the video evidence might have been
> subject to more than one interpretation, the jury did not clearly lose
> its way and create a manifest miscarriage of justice in either case in
> concluding that Wood had operated a vehicle under the influence of
> alcohol or drugs.

*Wood*, 2018-Ohio-875.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Wood argues, correctly, that to establish his guilt of operating a vehicle under the influence of alcohol, the State had to prove that his ability to drive was "appreciably impaired."  He complains that no scientific or medical evidence was presented to prove this element.  But the reason for this is clear:  the arresting officers attempted to obtain blood or breath samples from which such evidence could have been derived and Wood refused to provide the samples.  He admits that arresting officers testified to their observations related to his impaired ability, but he claims the only physical evidence is the videos they took which he says do not show appreciable impairment.  As the Second District found, those videos were shown to the jury and it was within the jury's competence to decide if they showed appreciable impairment.  Wood's personal opinion to the contrary does not supplant the jury's finding.

Under his First Ground for Relief, Wood also argues there was insufficient proof of venue

and jurisdiction to convict.  These two claims were argued on appeal as the third part of the First Assignment of Error and the Second District decided the issues as follows:

### Venue and Jurisdiction

[*P21]  In the third section of his first assignment of error, Wood argues that his convictions were against the manifest weight of the evidence because no evidence was presented as to jurisdiction and venue in either case. In his second assignment, he argues that the trial court erred in failing to dismiss his case "for lack of venue and jurisdiction." Wood's discussion of these issues refers to his Crim.R. 29 motion for a directed verdict at the close of the State's case and his motion to dismiss at the close of all the evidence, but we note that Wood did not raise the issue of jurisdiction or venue in either of these motions. In fact, he never raised these issues before or at trial. After the jury was instructed, he renewed his prior Crim.R. 29 motion (which had not raised the issue of jurisdiction or venue) out of the hearing of the jury, and "add[ed] [that] the State had failed to prove venue"; in response, the State asked the trial court to take judicial notice that certain landmarks mentioned in the testimony of the police officers were in Clark County. In reiterating its decision to overrule the motion to dismiss, the court found that, based on the landmarks and intersections referenced in the testimony, "the jury could find beyond a reasonable doubt both events occurred within Clark County, Ohio."

[*P22]  Ohio's common pleas courts are endowed with "original jurisdiction over all justiciable matters * * * as may be provided by law." Ohio Constitution, Article IV, Section 4(B); *Bank of Am., N.A. v. Kuchta*, 141 Ohio St. 3d 75, 2014-Ohio-4275, ¶ 20, 21 N.E.3d 1040. R.C. 2931.03 states that "[t]he court of common pleas has original jurisdiction of all crimes and offenses," with certain exceptions not relevant here. "Where it is apparent from the allegations that the matter alleged is within the class of cases in which a particular court has been empowered to act, jurisdiction is present." *Jimison v. Wilson*, 106 Ohio St. 3d 342, 2005-Ohio-5143, ¶ 11, 835 N.E.2d 34 (additional citations omitted).

[*P23]  Article I, Section 10 of the Ohio Constitution and R.C. 2901.12 require that "evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St. 3d 447, 2012-Ohio-5688, ¶ 20, 983 N.E.2d 324. "It is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in

the county and state as alleged in the indictment." Id. at ¶ 19, quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969, 5 Ohio L. Rep. 453 (1907), paragraph one of the syllabus. Circumstantial evidence may be used to establish venue. *State v. May*, 2015-Ohio-4275, ¶ 24, 49 N.E.3d 736 (8th Dist.); see also *State v. Brown*, 2d Dist. Clark No. 16 CA 53, 2017-Ohio-8416, ¶ 33, 99 N.E.3d 1135.

[*P24] If there were sufficient evidence, including circumstantial evidence, that Wood's offenses occurred in Clark County, Ohio, his arguments with respect to jurisdiction and venue must fail.

[*P25] Wood correctly observes that none of the witnesses expressly stated that the offenses occurred in Clark County. However, Officer Betts testified that he worked for German Township "here in Springfield," that he initiated the February 2, 2016 traffic stop in front of Northwest High School, and that Wood stopped his car on Lawrenceville Drive. Additional German Township officers responded to the scene, and Wood was transported to Springfield Regional Hospital. Officer Finney, also of the German Township Police Department, testified that on March 17 she stopped Wood on Snyder Domer Road, that Cpl. Perry (her supervisor) also arrived quickly at the scene, and that Wood was eventually transferred to the Clark County Jail. In Wood's own testimony, he stated that the February stop occurred by Northwest High School and that, in March 2016, he had been on Hominy Ridge Road prior to his traffic stop.

[*P26] The roads and buildings mentioned in the testimony at Wood's trial were not specifically identified as located in Clark County. However, the indictments state that the offenses occurred in Clark County, and the jury was instructed that, among other things, it must find that the offenses occurred in Clark County. Based on the evidence presented, we agree with the trial court that the jury could have reasonably found, beyond a reasonable doubt, that the offenses were committed in Clark County, Ohio, as alleged in the indictment. The trial court did not err in allowing the case "to proceed to deliberation," as Wood claims.

*Wood*, 2018-Ohio-875.

As the Second District's opinion points out, the jury was instructed that they had to find beyond a reasonable doubt that the alleged offenses occurred in Clark County, Ohio, and there was sufficient evidence presented from which they could make that finding. Neither Ohio law nor the

United States Constitution requires that essential facts be proved by direct evidence, but sufficient circumstantial evidence was presented to permit a verdict. Indeed, one questions how direct evidence of venue could be proved: how does one know that one is within a particular county or municipal jurisdiction except by relying on signs created and erected by others? In the experience of the undersigned in trying cases or reviewing transcripts, the evidence of venue is usually elicited by a single leading question to the arresting officer: Did all of this happen in the City of Dayton, County of Montgomery, and State of Ohio? While an affirmative answer to that question satisfies the constitutional requirement, the Magistrate Judge is aware of no case authority that that is the only way to prove venue.

In sum, the Second District's decision on Wood's First Assignment of Error is neither an unreasonable application of *Jackson, supra*, nor an unreasonable determination of the facts based on the evidence presented. It therefore entitled to deference under 28 U.S.C. § 2254(d)(1) and (2).

Wood's Ground One should be dismissed.

> **GROUND TWO:** The trial court committed reversible error and violated Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution and Article I, Section 5, 10 and 16 of the Ohio Constitution, by failing to dismiss the matter on Mr. Wood's motion for lack of venue and jurisdiction, resulting in a fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 36.

This ground for relief reiterates the claim to the same effect made under Ground One. Wood specifically argues that Judge O'Neill invaded the province of the jury by taking judicial notice of venue and jurisdiction in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Not so. Judicial notice in a proper situation, which would include venue, merely permits a fact to be established other than by direct or circumstantial evidence. Judge O'Neill did not instruct the jury

that it had to find for the State on the issue of venue and jurisdiction.

Ground Two is without merit and should be dismissed.

> **GROUND THREE:** The trial court committed reversible error by allowing testimony of invalid, unproven previous OVI convictions that were uncounseled/unconstitutional and erred by denying defense counsel the opportunity to develop the issue on cross examination of Corporal Perry, violating Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution as well as Article I, Section 5, 10 and 16 of the Ohio Constitution, resulting in a fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 37.)  As Petitioner notes, he was indicted for felonious OVI offenses which required the State to prove that he had been previously convicted of OVI five times in the past twenty years. He presented the claim made in his Third Ground for Relief as an assignment of error to the Second District on direct appeal and that court decided it as follows:

### Evidence of Prior Convictions

> [*P28]  In his third assignment of error, Wood contends that two of his prior convictions of OVI were "unconstitutional" and "uncounseled," and therefore were inadmissible against him in support of the prior convictions element. He claims that the trial court erred in not allowing his attorney to "develop [this] issue through cross-examination" of Cpl. Perry, who testified about the certified copy of Wood's "driving record" from the Ohio Bureau of Motor Vehicles (Exhibit 18), which listed Wood's prior convictions. He also asserts that the jury "undeniably" relied on the evidence of prior convictions in finding Wood guilty in this case, because of "the lack of evidence of impairment."

> [*P29]  The Supreme Court of Ohio has addressed the circumstances and manner in which a prior OVI conviction may be attacked for purposes of a penalty enhancement. In *State. v. Thompson*, 121 Ohio St. 3d 250, 2009-Ohio-314, 903 N.E.2d 618, the court stated:

> > "Where questions arise concerning a prior conviction, a reviewing court must presume all underlying proceedings were conducted in accordance with the rules of law and a defendant must introduce evidence to the contrary in order

to establish a prima-facie showing of constitutional infirmity." With respect to "uncounseled" pleas, we presume that the trial court in the prior convictions proceeded constitutionally until a defendant introduces evidence to the contrary. Thus, we conclude that for purposes of penalty enhancement in later convictions under R.C. 4511.19, after the defendant presents a prima facie showing that the prior convictions were unconstitutional because the defendant had not been represented by counsel and had not validly waived the right to counsel and that the prior convictions had resulted in confinement, the burden shifts to the state to prove that the right to counsel was properly waived.

*Id.* at ¶ 6, quoting *State v. Brandon*, 45 Ohio St.3d 85, 543 N.E.2d 501(1989), syllabus.

[*P30] Moreover, the supreme court expressly rejected the suggestion that a prima facie showing that prior convictions were unconstitutional can be made "merely by stating that the defendant had not been represented in the prior convictions and that the convictions had resulted in confinement," as Thompson had argued. The court noted that, because "a person has a constitutional right to represent himself or herself[,] * * * it is not possible to establish a constitutional infirmity merely by showing that a person did not have counsel." *Id*. The State does not have the burden of proving that a defendant was represented or had validly waived representation in proceedings that form the basis of convictions being used to enhance a subsequent OVI charge unless the defendant has made a prima facie showing that he or she was "uncounseled" in the prior convictions. *Id.* at ¶ 7.

[*P31] In this case, Wood testified at trial, but he did not testify or attempt to testify about the circumstances under which he entered his prior pleas, including his claim in his brief that two of his prior convictions were "unconstitutional" and "uncounseled." Moreover, he acknowledged his prior convictions, as reflected in Exhibit 18. Exhibit 18 indicates that Wood entered a guilty or no contest plea in each of the prior OVI cases, but it does not contain any information about Wood's representation by counsel or his waiver of the right to counsel. Wood did not offer any other evidence with respect to his representation in the prior cases.

[*P32] In the cross-examination of Cpl. Perry, defense counsel asked whether Perry knew if Wood was represented by counsel in his prior DUI cases, but the trial court sustained the State's objection

to this question, finding that it was not relevant. Notwithstanding whether the question was relevant, in response to a follow-up question, Perry made it clear that he knew nothing about Wood's prior convictions. Counsel was not prevented from developing this issue through examination of Cpl. Perry, since Perry had no knowledge beyond the facts reflected in Exhibit 18.

[*P33]  Wood's case is factually distinguishable from *State v. Troyer*, 5th Dist. Holmes No. 15 CA 18, 2016-Ohio-3090, a case on which he relies. In Troyer, the trial and appellate courts had before them extensive evidence about the defendant's prior pleas to domestic violence, including transcripts of his arraignments and plea hearings and his signed waivers of counsel. The trial court rejected Troyer's argument that his prior convictions could not be used to enhance the charge and sentence in the current case because the pleas were uncounseled. But, after reviewing all of the evidence, the appellate court concluded that the plea colloquy in one of the prior cases "was insufficient to establish the constitutionality of appellant's uncounseled plea" for purposes of the enhancement of the charge then before it; it remanded for resentencing. Because Wood did not present any evidence about the circumstances under which he entered his prior pleas to OVI offenses, *Troyer* does not support Wood's argument that his prior convictions likewise should not have been relied upon to enhance his offense and sentence.

[*P34]  In sum, Wood presented no evidence that his prior convictions suffered from any constitutional infirmity. At most, defense counsel's questions of Cpl. Perry (and Wood's argument on appeal) might suggest that he may not have been represented by counsel in some of his prior OVI cases. However, as discussed in *Thompson*, the absence of legal representation does not, in itself, establish that Wood's constitutional rights were violated or that his pleas were invalid. If Wood sought to challenge the use of any or all of his prior convictions to enhance the penalty in this case, he should have presented a prima facie case that his pleas in those cases did not comport with his constitutional rights. Neither the trial court nor this court is compelled to conduct a "simple search of the public record" of his prior cases, as Wood suggests, and there is no basis for us to conclude that such a search would have verified his claims.

[*P35] We discussed and rejected Wood's argument that there was no evidence of impairment under the first assignment of error, above. Thus, we find no merit to his argument that the jury's improper reliance on his prior convictions is the only explanation for his convictions in these cases.

16

*Wood*, 2018-Ohio-875.

In the Petition, Wood essentially ignores the law cited by Judge Froelich which provides that prior convictions are presumed to be valid until and unless the defendant testifies to facts or provides other evidence (e.g., a transcript of a flawed plea colloquy) shifting the burden of proof. Wood does not claim that he testified to any such facts or presented any evidence that the prior convictions were unconstitutional. Therefore he has not shown the State failed to offer sufficient evidence of his prior convictions.

Petitioner also offers a Confrontation Clause argument here about the trial court's prevention of his attorney from questioning Officer Perry about whether the prior convictions were counseled or not. The judge sustained a relevance objection and that ruling was correct: how would Perry have known whether the convictions were counseled or not? If he did not know, his answer to that effect could have misled the jury into thinking that he should have known. The only witness present who could have laid the predicate for shifting the burden of proof to the State was Wood, and he said nothing on the subject. If, as Wood claims "*A simple review of the public record in both of those cases reveals that the convictions were in fact without an attorney,*" **(Petition, ECF No. 1, PageID 40)** why didn't his lawyer introduce that part of the public record? (In the discussion *infra* of Wood's Post-Conviction Petition, this Report discusses Wood's own failure to present such evidence when proceeding *pro se*.)

Wood also claims that introduction of the prior convictions contributed to the jury's finding that he was appreciably impaired on this occasion. As the Second District pointed out, the prior convictions were an element of the offenses with which he was charged and thus had to be proved. Moreover, the Supreme Court has never held that introduction of prior bad acts evidence violates the Constitution. *Bugh v. Mitchell*, 329 F.3d 496 (6th Cir. 2003).

Petitioner's Ground Three is without merit and should be dismissed.

17

> **GROUND FOUR:** Mr. Wood was prejudicially deprived of the effective assistance of trial counsel violating Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution as well as Article I, Section 5, 10 and 16 of the Ohio Constitution, resulting in a fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 42).

Although Petitioner begins his discussion of this Ground for Relief with a wide range of allegations of ineffective assistance of trial counsel, he narrows his focus to four asserted failures of trial counsel to provide effective assistance which this Report will discuss in turn.

Wood claims it was ineffective assistance of trial counsel to fail to file a motion to suppress because there was no reasonable articulable suspicion to support either of the traffic stops.  He also focuses on trial testimony that law enforcement received an anonymous tip that led to the March 17th stop (Petition, ECF No. 1, PageID 45-46).  He further claims his trial attorney provided ineffective assistance of trial counsel when he failed to file a motion *in limine* regarding (1) the unconstitutional stops and requests for field sobriety tests, (2) the fact that the prior convictions were uncounseled, and (3) the relevance of the prior convictions.  *Id.* at 46-47.  Wood asserts his attorney could have proved from readily available public records that his 2001 and 2007 convictions for OVI were uncounseled. *Id.* at PageID 47-48.  As an alternative to challenging the prior convictions, Wood asserts his attorney could have prevented their prejudicial impact on the jury by stipulating to them or waiving a jury on that element[2] and asking the trial judge to decide it.  *Id.* at PageID 48.

Wood presented these claims to the Second District on direct appeal and that court decided

---

[2] Technically the prior convictions were necessary to prove a specification to the underlying offenses.  Because the specification increases the penalty, elements of the specification must be proven beyond a reasonable doubt to the satisfaction of the jury.  *Apprendi, supra.*

the claims as follows:

## Ineffective Assistance of Counsel

[*P43]  In his fourth assignment of error, Wood contends that he was denied the effective assistance of counsel in the following ways: 1) trial counsel failed to file a motion to suppress evidence; 2) trial counsel failed to file a motion in limine "on the issues associated with the prior convictions"; 3) trial counsel did not investigate and present evidence about whether Wood's prior convictions were counseled or uncounseled; and 4) trial counsel did not stipulate to Wood's prior convictions.

[*P44]  We review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

[*P45]  To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. See id.; *Bradley* at 142. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, ¶ 38, 84 N.E.3d 193 (2d Dist.).

[*P46]  With respect to a motion to suppress evidence, Wood argues that trial counsel should have sought to suppress "the unlawful arrests and evidence obtained during the illegal detentions." His brief does not contain any support for his assertions that the arrests were unlawful or the detentions illegal, nor does it make clear why trial counsel should have been "aware of the necessary arguments based on his position at trial" that the officers lacked a "reasonable articulable suspicion of impairment to conduct field sobriety tests."

[*P47]  Wood also argues that trial counsel should have filed a motion to suppress when he learned for the first time at trial that, on

the evening of March 17, 2016, the police had received an anonymous tip about a white Oldsmobile with an intoxicated driver traveling on Snyder Domer Road. Neither the defense nor the prosecutor had been informed of this tip prior to trial. It was first mentioned by Officer Finney on cross-examination, when asked how Cpl. Perry had arrived at the scene so quickly. Cpl. Perry was subsequently examined about it in voir dire (prior to his testimony before the jury), after defense counsel filed a motion to dismiss Case No. 16-CR-144 (the March 17 offense) and for a mistrial in Case No. 16-CR-143 (the February 2 offense).

[*P48]  Because trial was underway when this detail was revealed, and the jury had already heard Officer Finney's testimony about it, trial counsel cannot be faulted for failing to file a motion to suppress. Trial counsel requested dismissal on Case No. 16-CR-144 at the end of Officer Finney's testimony, based on a breach of the discovery rules. Because this occurred at the end of the day, the court invited counsel to file written motions the next day, which defense counsel did. The court then heard arguments from the parties before overruling the motions. The trial court concluded that the information in question had not adversely affected the presentation of Wood's defense, because it primarily explained the speed with which Perry arrived at the traffic stop. The court found that dismissal was not warranted, noting that the State had not used the information in its case in chief. The defense was then allowed to voir dire Cpl. Perry about the tip outside the presence of the jury, and the defense eventually cross-examined Perry about the tip as well, and attempted to imply that the tip was the reason for the stop, rather than the reasons testified to by Officer Finney. Defense counsel's handling of this issue did not deny Wood the effective assistance of counsel.

[*P49]  Under the third assignment of error, we discussed Wood's failure to offer any evidence at trial to support his assertion on appeal that some of his prior convictions for OVI may have resulted from "uncounseled," unconstitutional pleas. Because there is no evidence in the record of this case to support this assertion, we cannot conclude that counsel acted ineffectively in failing to raise the issue either by evidence at trial or in a motion in limine. Arguments relying on evidence outside the record may potentially be raised in postconviction proceedings.

[*P50]  Finally, Wood argues that counsel was ineffective in failing to stipulate to his prior convictions, which "should [have been] kept from the Jury"; he asserts that a stipulation would have "in all probability" led to a different outcome.

20

[*P51] Wood incorrectly assumes that a stipulation would have kept all information about his prior convictions from the jury. Certain separate offenses may be severed for trial, where prejudicial evidence required to support one offense, such as having weapons under disability, is not relevant to other offenses. But the elements of a single offense generally cannot be severed, such that some elements are found by the jury and others are found by the trial court. A stipulation would have presented the information to the jury in a different way, but the jury would nonetheless have learned of the prior convictions.

[*P52] Moreover, as discussed under the third assignment of error, the State did not present details about these prior convictions in a manner that was unduly prejudicial. Cpl. Perry provided the most detailed testimony, with specific dates as to each prior offense. The other officers were aware of Wood's prior offenses, but did not testify about them with any specificity. Thus, the failure to stipulate did not lead to prolonged testimony about Wood's record.

[*P53] Courts must be circumspect about the admission of evidence of prior bad acts, for whatever purpose.

> Recognition to the prejudicial effect of prior-convictions evidence has traditionally been related to the requirement of our criminal law that the State prove beyond a reasonable doubt the commission of a specific criminal act. It is surely engrained in our jurisprudence that an accused's reputation or criminal disposition is no basis for penal sanctions. Because of the possibility that the generality of the jury's verdict might mask a finding of guilt based on an accused's past crimes or unsavory reputation, state and federal courts have consistently refused to admit evidence of past crimes except in circumstances where it tends to prove something other than general criminal disposition.

*Spencer v. Texas*, 385 U.S. 554, 575, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (Warren, C.J., concurring in part and dissenting in part.). However, as we found above, the prior convictions in this case were admitted as an element of the offenses, not to show general or specific criminal disposition. Wood was not denied the effective assistance of counsel due to counsel's handling of his prior convictions.

[*P54] The fourth assignment of error is overruled.

*Wood*, 2018-Ohio-875.

21

As noted above with respect to the First Ground for Relief, when a state court decides a federal constitutional question on the merits, a later federal habeas court must defer to that decision unless it is contrary to or an objectively unreasonable application of the relevant United States Supreme Court precedent. Here the Second District employed the correct federal standard for ineffective assistance of trial counsel adopted in *Strickland v. Washington,* 466 U.S. 668 (1984). In his Petition Wood does nothing to show the Second District's application of *Strickland* was unreasonable.

Reviewing that decision under the deferential AEDPA[3] standard, the Magistrate Judge concludes it was not only reasonable but correct. In particular with respect to the anonymous tip, neither the prosecutor nor the defense knew about the tip prior to trial. Once he learned about it, Attorney Butz tried valiantly to get the March 17, 2016, indictment dismissed based on lack of pretrial disclosure. There was no evidence of record to show the prior convictions were uncounseled, so the Second District could not find Attorney Butz at fault for not making that claim. Ohio law does not allow severance of an element, such as prior convictions, as opposed to a separate count, such as having weapons while under a disability, a frequently-severed count in Ohio felony trials.

Because the Second District's decision was a reasonable application of *Strickland*, Wood's Fourth Ground for Relief is without merit and should be dismissed.

> **GROUND FIVE:** The trial court committed reversible error by joining the two indictments/complaints/cases for trial purposes; violating Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution as well as Article I, Section 5, 10 and 16 of the Ohio Constitution, resulting in a fundamental miscarriage of justice.

---

[3] Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").

(Petition, ECF No. 1, PageID 50).

In his Fifth Ground for Relief, Wood asserts his two cases were prejudicially joined for trial. Wood raised this claim as his Fifth Assignment of Error on direct appeal and the Second District decided it as follows:

### Joinder

[*P55] In his fifth assignment of error, Wood asserts that the trial court erred in trying his two cases together, because the presentation to the jury of the evidence in both cases "clearly resulted in convictions on all charges in both cases." As with many of Wood's other arguments, this argument is premised, in part, on his belief that there was no other explanation for his convictions.

[*P56] The State argues that Wood failed to show any prejudice and did not object at trial, such that we review only for plain error. It also contends that the offenses were of the "same or similar character," that joinder of such offenses is favored under the law, that the evidence was simple and direct, and that there was an "overlapping witness" (Cpl. Perry), all of which supported joinder of the offenses.

[*P57] Pursuant to Crim.R. 8(A), joinder of multiple offenses is permitted when the charged offenses are "of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." As a general rule, joinder of offenses is favored to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish inconvenience to the witnesses. *State v. Wild,* 2d Dist. Clark No. 2009 CA 83, 2010-Ohio-4751, ¶ 9, citing *State v. Torres,* 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981).

[*P58] If it appears that a party will be prejudiced by the joinder of indictments, a party may request severance of offenses for trial, and a court may grant severance or provide other relief "as justice requires." Crim.R. 14. Woods opposed the State's motion for joinder prior to trial, but he did not file a motion to sever, as permitted by Crim.R. 14. We see no meaningful distinction in this case between the defendant's opposition to a motion for joinder under Crim. R. 8(A) and the filing of a defense motion to sever under Crim.R. 14.

[*P59]  A claim of prejudice may be negated by showing that evidence of each crime joined at trial is simple and direct. *State v. Lackey*, 2015-Ohio-5492, ¶ 49, 55 N.E.3d 613 (2d Dist.), citing *State v. LaMar,* 95 Ohio St. 3d 181, 2002-Ohio-2128, ¶ 50, 767 N.E.2d 166. "[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of whether the evidence is admissible as other-acts evidence." (Internal citations omitted.) *State v. Coley*, 93 Ohio St.3d 253, 260, 2001- Ohio 1340, 754 N.E.2d 1129 (2001), citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

[*P60]  We review the trial court's ruling on joinder for an abuse of discretion. *State v. Dean*, 146 Ohio St. 3d 106, 2015-Ohio-4347, ¶ 58, 54 N.E.3d 80; *State v. Webster,* 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, ¶ 42. The defendant "'bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance.'" *Dean* at ¶ 60, quoting *State v. Brinkley,* 105 Ohio St. 3d 231, 2005-Ohio-1507, ¶ 29, 824 N.E.2d 959.

[*P61]  Wood's memorandum in opposition to the State's motion for joinder was very short. In it, he acknowledged that, where the evidence is simple and direct, joinder is proper. Wood also stated in his memorandum, without elaboration or explanation of prejudice, that where evidence of one offense would not be admissible in a trial of another offense, the offenses should not be joined.

[*P62]  The offenses were of the same character, since they both alleged impaired driving, a test refusal, and five prior violations. The evidence in Wood's cases was simple and direct. There were two distinct incidents, and with respect to each, the arresting officer testified about the course of events and the bases for his or her belief that Wood was driving under the influence. Videos of portions of each stop were also played for the jury. There was little possibility that the jury would confuse the two incidents to Wood's prejudice.

[*P63]  The case which Wood cites for the proposition that offenses should not be joined where evidence of one offense would not be admissible in a trial of another offense, *State v. Benner*, 40 Ohio St.3d 301, 306, 533 N.E.2d 701, 535 N.E.2d 315 (1988), does not so hold. Rather, *Benner* held that  prejudice does not result from joinder "[w]here evidence of each of the joined offenses would be admissible at separate trials." (The case involved a series of rapes and murders or attempted murders, with certain similar features.) The supreme court's finding that prejudice is not demonstrated where evidence from multiple crimes would be admissible at

separate trials cannot reasonably be construed as a presumption that prejudice does exist where the evidence of the other offenses would likely not be admissible in separate trials. Wood did not make any specific argument as to how he was prejudiced by the joinder of these cases.

[*P64] Of the three State's witnesses in this case, one of them, Cpl. Perry, testified regarding his involvement in both cases. Perry testified that he was the supervisor of both of the other officers and, as such, he had reviewed pictures of the containers found in Wood's car on each occasion; Perry testified about how the numbers of containers compared. Perry testified — arguably to Wood's benefit — that some of the alcoholic beverage containers in the car on March 17 may also have been in the car on February 2. Perry was also an officer on the scene of the March traffic stop, but interacted with Wood at the hospital after the February stop; at the March 17 stop, Perry was also able to identify Wood, who had refused to identify himself, based on their prior interactions.

[*P65] Joinder is favored and, in Wood's cases, it streamlined the presentation of Cpl. Perry's testimony in similar cases. These facts, coupled with the simple and direct nature of the evidence, supported the trial court's decision to permit joinder. The jury was instructed — in opening statement by the prosecutor and in jury instructions by the court ? [sic] that it was required to consider the offenses separately and distinctly.

[*P66] There is always a danger of a jury's inferences from the fact of prior convictions or another charge for the same offense. Justice Jackson famously said, in a conspiracy case, that "the naïve assumption that prejudicial effects can be overcome by instructions to the jury * * * all lawyers know to be an unmitigated fiction." *Krulewitch v. United States,* 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 (1949). Similarly, referencing *Krulewitch*, Chief Justice Warren observed in *Spencer, supra*, "Of course it flouts human nature to suppose that a jury would not consider a defendant's previous trouble with the law in deciding whether he has committed the crime currently charged against him." *Spencer*, 385 U.S. 554, 575, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

[*P67] Nonetheless, like most states, Ohio has consistently held that "juries are presumed to follow the court's instructions." See, e.g, *State v. Williams*, 134 Ohio St. 3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, reconsideration granted and remanded for consideration of remaining assignments of error, 133 Ohio St. 3d 1512, 2012-Ohio-6209, 979 N.E.2d 1290. Wood has not demonstrated that the jury

failed to follow these instructions or how he was prejudiced by the joinder; we cannot presume prejudice. Although Wood argues that there was no other explanation for his convictions, because they were against the manifest weight of the evidence, we rejected this argument, above.

[*P68]  Moreover, if an objection to prejudicial joinder is not renewed at the close of the State's case or at the conclusion of the evidence, a defendant forfeits his ability to raise the issue on appeal, and we review the matter only for plain error. *State v. McComb*, 2017-Ohio-4010, ¶ 51, 91 N.E.3d 255 (2d Dist.), citing *State v. Stargell*, 2016-Ohio-5653, ¶ 12, 70 N.E.3d 1126 (2d Dist.). Wood failed to renew his objection to the joinder of these offenses at the end of the State's case or at the end of trial. It is conceivable that, once he saw the manner in which the evidence was presented, he did not believe that the joinder had been prejudicial to him. Regardless, there was no error.

[*P69]  We cannot find that the trial court abused its discretion in allowing these cases to be tried together, with the appropriate instructions to the jury.

[*P70]  The fifth assignment of error is overruled.

*Wood*, 2018-Ohio-875.

In arguing this claim, Wood asserts that without joinder the jury in each of the cases would not have heard of the prior convictions, but that is not so:  the prior conviction specification applied to both incidents.

"Improper joinder does not, in itself, violate the Constitution."  *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986).  To obtain federal habeas relief on a misjoinder claim involving state law, a petitioner "must show that misjoinder of the counts 'result[ed] in prejudice so great as to deny a defendant his . . . right to a fair trial."  *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007)(quoting *Lane*, 474 U.S. at 446 n.8).

Moreover, this misjoinder claim is properly treated as procedurally defaulted.  As the Second District noted, Ohio law requires that a misjoinder objection be renewed at trial and no

such renewal occurred here.  Therefore the Second District reviewed this claim only for plain error.

An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural

default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir.  2012); *Jells v. Mitchell,* 538 F.3d 478,

511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *Awkal v. Mitchell*,

613 F.3d 629, 648 (6th Cir. 2010)(en banc); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005);

*Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001),

*citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute

a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).  However,

the opinion of a state court on plain error review is still entitled to AEDPA deference if the federal

court reaches the merits despite the procedural default.  *Fleming v. Metrish*, 556 F.3d 520, 532 (6th

Cir. 2009); *Kittka v. Franks*, 539 Fed. Appx. 668, 672 (6th Cir. 2013); *Bond v. McQuiggan*, 506

Fed. Appx. 493, 498 n. 2 (6th Cir. 2013); *Stojetz v. Ishee*, 2014 U.S. Dist. LEXIS 137501 *231

(S.D. Ohio Sept. 24, 2014)(Frost, D.J.).

Wood's Fifth Ground for Relief should therefore be dismissed.


**Part Two of the Petition**


In the second part of his Petition, Wood discusses claims related to his Application to

Reopen his Direct Appeal under Ohio R.App.P. 26(B).  As noted above, the Magistrate Judge has

preserved Wood's labeling.

> **GROUND ONE**: Mr. Wood's Appellate and trial Counsel was
> ineffective for failing to address sentencing errors; violating
> Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the
> U.S. Constitution as well as Article I, Section 10 and 16 of the Ohio
> Constitution, resulting in a fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 57.)

Under this Ground for Relief in the Petition, Wood makes several arguments which he claims should properly have been raised on direct appeal but were not. Wood filed a 26(B) Application which provides an Ohio criminal defendant with an opportunity to litigate claims of ineffective assistance of appellate counsel.

Wood's First Omitted Assignment of Error in the 26(B) Application, the precursor to Ground One in Part Two of the Petition, reads:

> MR. WOOD'S APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO ADDRESS THE ERRORNIOUS [sic] NOVEMBER 3, 2016 SENTENCING JUDGMENT ENTRIES, WHICH ARE CONTRARY TO LAW. (I) SUBJECT TO THE R.C. 2941.1413 SPECIFICATION OF MANDATORY INCARCERATION FOR FIVE OMVI OFFENSES WITHIN A TWENTY YEAR SPAN, THE TRIAL COURT ERRED BY SENTENCING MR. WOOD TO A MANDATORY PRISON TERM ON THE UNDERLYING OMVI OFFENSES WHICH IS CONTRARY TO THE PLAIN LANGUAGE OF 2929.13(G)(2) AND (2) THE COURT ERRONIOUSLY [sic] SENTENSED [sic] MR. WOOD BY SENTENCING HIM ON BOTH COUNTS IN THE INDICTMENTS OF EACH CASE.

(26(B) Application, State Court Record, ECF No. 14, PageID 479.)

The Second District found there was no ineffective assistance of appellate counsel in failing to raise this assignment on appeal because the sentencing entries of November 3, 2016, correctly reflected the sentences imposed orally in open court, whereas the November 1, 2016, entry had been in error. (Decision and Entry of July 2, 2018, State Court Record, ECF No. 14, PageID 587-89.)

> **GROUND TWO:** Mr. Wood's Appellate Counsel was ineffective for failing to address the ineffective assistance of trial counsel, whereas counsel failed to: (A) file any pretrial motions subjecting the basis of the unlawful stops, in violation of the Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the

28

> Ohio constitution, to adversarial testing prior to trial; and (B) trial counsel failed to call expert witnesses; in violation of Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution as well as Article I, Section 5, I O and 16 of the Ohio Constitution, resulting in a fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 61-62.)

Wood's parallel Second Omitted Assignment of Error in the 26(B) Application reads:

> MR. WOOD'S APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO ADDRESS INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, WHEREAS MR. WOOD'S TRIAL COUNSEL FAILED TO FILE PRE TRIAL MOTIONS SUBJECTING THE BASIS OF THE STOPS TO ADVERSERIAL [sic] TESTING AND FAILED TO CALL EXPERT WITNESSES

(26(B) Application, State Court Record, ECF No. 14, PageID 481.)

The Second District found that trial counsel did not provide ineffective assistance in failing to claim one of the stops was pretextual because the officer had testified to other bases for making the stop besides the partial obscuring of the license plate validation sticker (Decision and Entry of July 2, 2018, State Court Record, ECF No. 14, PageID 589-90.) Failure to call an expert on traumatic head injuries Wood has suffered was not ineffective assistance of trial counsel because the evidence would have been irrelevant. *Id.* at 590-91. Because there was no demonstration of ineffective assistance of trial counsel, there was no ineffective assistance of appellate counsel in failing to raise these claims. *Id.*

> **GROUND THREE:** Mr. Wood's Appellate and trial Counsel were ineffective for failing to: **(A)** address the discovery violation, "anonymous tip," as a Trial Court's abuse of discretion; and **(B)** Appellate Counsel failed to effectively address ineffective trial counsel and the unlawful arrests in violation of Mr. Wood's Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution and failure to file motions to suppress evidence illegally seized; violating Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution as well as Article I,

Section 5, 10 and 16 of the Ohio Constitution, resulting in a
fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 71.)

Wood's parallel Third Omitted Assignment of Error in the 26(B) Application reads:

MR. WOOD'S APPELLATE COUNSEL WAS INEFFECTIVE,
FOR FAILING TO EFFECTIVELY ADDRESS THE
"ANONYMOUS TIP" AS AN INDIVIDUAL ASSIGNMENT OF
ERROR, FAILED TO EFFECTIVELY ARGUE THE
UNLAWFUL ARRESTS, THE LACK OF REASONABLE
ARTICULITABLE SUSPICION OF IMPAIRMENT TO
REQUEST FIELD SOBRIETY TESTS AND SUPPRESSION OF
EVIDENCE OBTAINED DURING THE ILLEGAL
DETENTIONS.

(26(B) Application, State Court Record, ECF No. 14, PageID 484.)

The Second District noted that these issues had been discussed in its direct appeal opinion

and therefore did not form a basis for reopening (Decision and Entry of July 2, 2018, State Court

Record, ECF No. 14, PageID 591-92).

**GROUND FOUR:** Mr. Wood's Appellate Counsel was ineffective
for failing to address the cumulative effect of errors which deprived
Mr. Wood of his Sixth Amendment right to a fair trial; in violation
of his Fifth, Sixth and Fourteenth Amendment rights to the U.S.
Constitution as well as Article I, Section 5, 10 and 16 of the Ohio
Constitution, resulting in a fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 88.)

Wood's parallel Fourth Omitted Assignment of Error in the 26(B) Application reads:

THE ABOVE ASSIGNMENTS OF ERRORS, WHEN TAKEN
TOGETHER, DEPRIVED THE APPELLANT, MICHAEL A.
WOOD, OF A FAIR TRIAL AS GUARANTEED BY THE
UNITED STATES AND OHIO CONSTITUTIONS "DUE
PROCESS" CLAUSE

(26(B) Application, State Court Record, ECF No. 14, PageID 486.) The Second District rejected

this claim because Wood had not shown multiple instances of harmless error (Decision and Entry

of July 2, 2018, State Court Record, ECF No. 14, PageID 592).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors.  *Strickland, supra,* at 690;  *Maryland v. Kulbicki*, 577 U.S. ___, 136 S. Ct. 2, *; 193 L. Ed. 2d 1 (2015); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997).  *Kulbicki* rejects retrospective perfectionism regarding lawyer's conduct and notes the difference between finding forensic material in 1995 and 2015.

The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise.

*Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., citing *Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a

petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

To overcome a state appellate rejection of a claim of ineffective assistance of appellate counsel which was premised on a claim of ineffective assistance of trial counsel and where the state appellate court has applied the correct *Strickland* standard, a habeas petitioner must demonstrate ineffective assistance at both levels to show the appellate decision on the ineffective assistance of appellate counsel claim was an unreasonable application of *Strickland*. Wood has failed to make that demonstration. With respect to each of his omitted assignments of error, the Second District provided reasonable explanations of why the underlying ineffective assistance of trial counsel had no merit. Grounds One through Four of Part Two of the Petition should be dismissed.

**Part Three of the Petition**

In the third part of his Petition, Wood pleads grounds for relief related to the claims for relief he raised in his petition for post-conviction relief under Ohio Revised Code § 2953.21. Here again this Report will follow Petitioner's labeling.

> **GROUND ONE:** Mr. Wood's 2001 and 2007 prior misdemeanor convictions were uncounseled without valid waiver, resulted in imprisonment, were, thus, constitutionally infirm, and should have not been used to enhance the degree of the present charges; violating Petitioner's Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution and Article I, Section 5, 10 and 16 of the Ohio Constitution, resulting in a fundamental miscarriage of justice.

(Petition, ECF No. 1, PageID 93.)

Petitioner presented this claim as his first assignment of error on appeal from denial of post-conviction relief and the Second District decided it as follows:

**Evidence of Prior Convictions**

[*P11]  In his first assignment of error, Wood contends that his 2001 and 2007 convictions for OVI were "unconstitutionally infirm" because they occurred without the benefit of counsel or a valid waiver of the right to counsel. As a result, he maintains that the use of those two prior convictions to enhance the degree of his 2016 OVI offenses violated the United States and Ohio Constitutions.

[*P12]  Although this Court previously rejected Wood's similar argument on direct appeal, that result was premised on the 2016 trial record's silence regarding the circumstances of Wood's prior OVI convictions. See *Wood,* 2d Dist. Clark No. 2016-CA-69, 2018-Ohio-875, at ¶ 31-34. A petition for postconviction relief, however, "is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction." *State v. Clark*, 2017-Ohio-120, 80 N.E.3d 1251, ¶ 14 (2d Dist.), quoting *State v. Monroe*, 2015-Ohio-844, 29 N.E.3d 391, ¶ 37 (10th Dist.). As Wood's petition for postconviction relief represents Wood's first opportunity to present this Court with evidence about the purportedly "uncounseled" nature of his prior OVI convictions, the doctrine of res judicata does not preclude Wood from now challenging his 2016 convictions on that basis. See *State v. Cole,* 2 Ohio St.3d 112, 114, 2 Ohio B. 661, 443 N.E.2d 169 (1982) (introduction on petition for postconviction relief of evidence dehors the record suffices "at least to avoid dismissal on the basis of res judicata").

[*P13]  Nevertheless, we conclude that Wood still has failed to present cognizable evidence to show that his prior OVI convictions were constitutionally deficient. In considering the same issue on Wood's direct appeal, this Court articulated the applicable standard as follows:

"Where questions arise concerning a prior conviction, a reviewing court must presume all underlying proceedings were conducted in accordance with the rules of law and a defendant must introduce evidence to the contrary in order to establish a prima-facie showing of constitutional infirmity." With respect to "uncounseled" pleas, we presume that the trial court in the prior convictions proceeded constitutionally until a defendant introduces

evidence to the contrary. Thus, we conclude that for purposes of penalty enhancement in later convictions under R.C. 4511.19, after the defendant presents a prima facie showing that the prior convictions were unconstitutional because the defendant had not been represented by counsel and had not validly waived the right to counsel and that the prior convictions had resulted in confinement, the burden shifts to the state to prove that the right to counsel was properly waived.

*Wood* at ¶ 29, quoting *State v. Thompson*, 121 Ohio St.3d 250, 2009-Ohio-314, 903 N.E.2d 618, ¶ 6, quoting *State v. Brandon*, 45 Ohio St.3d 85, 543 N.E.2d 501 (1989), syllabus.

[*P14]  The statute that governs postconviction relief permits a petitioner to "file a supporting affidavit and other documentary evidence in support of the claim for relief." R.C. 2953.21(A)(1)(a). As the trial court accurately recounted in deciding Wood's petition for postconviction relief, Wood offered two types of documents in support of his petition. The first was a document bearing Wood's signature and titled "Affidavit of Varity" [sic], which consisted of a typed statement that has not been confirmed by an oath or affirmation before a notary public or other officer authorized to administer such. The second consisted of five pages that appeared to be printouts of Clark County Municipal Court records from five different cases in which Wood appeared as a defendant, to which some unattributed handwritten notes had been added. Neither was a cognizable form of evidence.

[*P15]  According to the Ohio Supreme Court, "[a]n affidavit must appear, on its face, to have been taken before the proper officer and in compliance with all legal requisites. A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit." *In re Disqualification of Pokorny,* 74 Ohio St. 3d 1238, 657 N.E.2d 1345 (1992) (citation omitted). Because Wood's purported "affidavit" contained no such indicia of reliability, it in fact was not an affidavit, and is not proper evidence to be considered by this Court.

[*P16]  Similarly, the unauthenticated copies of court records attached to Wood's "affidavit" did not comport with Evid.R. 901. "[I]t is well settled that unauthenticated documents which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value." *Douglass v. Salem Community Hosp.*, 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, ¶ 25 (7th Dist.), citing *Citizens Ins. Co. v. Burkes*, 56 Ohio App.2d 88, 95-96, 381

N.E.2d 963 (8th Dist.1978); *Sparks v. Erie Cty. Bd. of Commrs.*, 6th Dist. Erie No. E-97-007, 1998 Ohio App. LEXIS 87, 1998 WL 15929 (Jan. 16, 1998).

[*P17]  Even if the trial court had considered the unauthenticated copies that Wood produced, however, those copies at most showed that Clark County Municipal Court records reflect no attorney appearing on Wood's behalf in Case Nos. 1-17088, 7-00132, or 12-14318. Such documents offer nothing regarding the effectiveness of Wood's waiver of the right to counsel in any of those cases. Therefore, although the State admits that Clark County Municipal Court Case Nos. "1214318," "700132" and "11708" were among the prior OVI convictions on which it relied to charge Wood with felony OVI in the 2016 cases (see Brief of Appellee, the State of Ohio, pp. 2-3), that admission was not enough to satisfy Wood's evidentiary burden [footnote omitted].

[*P18]  Given the absence of cognizable evidence to demonstrate the constitutional deficiency of any of Wood's five prior OVI convictions used to enhance the conviction under review, his first assignment of error is overruled.

*Wood*, 2018-Ohio-3204.

In his Petition, Wood argues that he presented in post-conviction evidence that his prior convictions were uncounseled (ECF No. 1-1, PageID 93, *et seq*.)  That misses the point of the Second District's decision:  a purported affidavit which has not been sworn to before a public officer authorized to administer oaths is not evidence at all.  Woods calls notarization a "procedural technicality." *Id.* at PageID 95.  Again, that misses the point that it is a **required** procedural technicality which is required to turn a statement into an affidavit.  Wood is correct that people can lie in sworn affidavits, but such lies are prosecutable as perjury, whereas lies in mere statements are not.

Wood is certainly right in his argument on the merits:  a person is entitled to counsel in any criminal proceeding in which incarceration is a possible consequence of conviction.  *Argersinger v. Hamlin,* 407 U.S. 25 (1972)(misdemeanor cases where imprisonment is a possibility); *Alabama*

*v. Shelton,* 535 U.S. 654 (2002)(even if sentence is suspended). But the burden is not on the State in a later trial to prove that the prior conviction was counseled, at least until the defendant has called that into question by presenting some admissible evidence to the contrary.

In this and other places in the Petition, Wood relies on *Townsend v Sain,* 372 U.S. 293, 312 (1963), which held that State determinations of fact are not binding in federal habeas corpus proceeding if not based on "full and fair" fact-finding procedures. However, the portion of 28 U.S.C. § 2254(d) which codified *Townsend* was replaced with § 2254(e)(1) by the AEDPA. That statute requires proof by a petitioner by clear and convincing evidence that state court fact findings are erroneous.

> **GROUND TWO:** Mr. Wood was not afforded the effective assistance of counsel, whereas counsel failed to investigate prior convictions, object to admission of prior convictions and/or file motion to exclude prior convictions from being presented at trial to the jury; prejudicing him in violation of his Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution as well as Article I, Section 5, 10 and 16 of the Ohio Constitution, resulting in a fundamental miscarriage of justice.

(Petition , ECF No. 1-1, PageID 96). The Second District rejected this claim on the same basis as it rejected the first: lack of any admissible evidence that the prior convictions were invalid. *Wood*, 2018-Ohio-3204, ¶¶ 19-21. Wood's Petition here merely argues with the Second District about what evidence should be sufficient to prove the prior convictions were uncounseled. That is a question of Ohio evidence law on which the Second District's decision is binding on this Court. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005)*; Vroman v. Brigano*, 346 F.3d 598

(6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

> **GROUND THREE:** The trial court abused its discretion when it dismissed Mr. Wood's Post Conviction Relief Motion without holding an evidentiary hearing; violating Petitioner's Fifth and Fourteenth Amendment rights to the U.S. Constitution as well as Article I, Section 10 and 16 of the Ohio Constitution, resulting in a fundamental miscarriage of justice.

(Petition, ECF No. 1-1, PageID 103.)

This Ground for Relief does not state a claim cognizable under the United States Constitution. To put it another way, whether or not a state court judge abused his or her discretion is not a constitutional question. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). Even assuming the state courts violated state statutes by not giving Wood an evidentiary hearing on his post-conviction petition, that does not state a constitutional violation. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court

certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 27, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

.